IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | No. 4:CR-01-304 |
| | : | No. 4:CV-07-348 |
| GEORGE A. WINKELMAN, and | : | No. 4:CV-07-349 |
| JOHN F. WINKELMAN, JR. | : | |
| | : | (Judge McClure) |
| Defendants. | : | |

# M E M O R A N D U M

March 10, 2008

**BACKGROUND:**

On June 18, 2003, a jury in the Middle District of Pennsylvania found

defendant George A. Winkelman guilty of five counts related to narcotics

trafficking.  The same jury also found defendant John Winkelman, Jr. guilty of

seven counts related to narcotics trafficking.  On November 12, 2003, we

sentenced defendant George Winkelman to a term of imprisonment of 720 months.

On December 12, 2003, we sentenced John Winkelman, Jr. to imprisonment for the

remainder of his natural life.

Both defendants appealed their conviction.  On May 18, 2006, the United

States Court of Appeals for the Third Circuit affirmed both defendants' convictions

and John Winkelman, Jr.'s sentence, but vacated George Winkelman's sentence

1

and remanded the case for resentencing under United States v. Booker, 543 U.S.

220 (2005).  On October 17, 2006, we resentenced George Winkelman to a term of

imprisonment of 480 months.  George Winkelman appealed the sentence but later

moved to withdraw the appeal and the Third Circuit granted his motion to

withdraw on January 19, 2007.

On February 23, 2007, George Winkelman filed a motion and supporting

brief under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence.  (Rec.

Doc. Nos. 1020-21.)  The same day, John Winkelman, Jr. also filed a motion and

supporting brief under 28 U.S.C. § 2255.  (Rec. Doc. Nos. 1022-23.)  On March 1,

2007, we ordered both defendants to file a notice of election.  (Rec. Doc. Nos.

1024-25.)  On March 19, 2007, both defendants filed their election to have the

court rule on their motions as filed.  (Rec. Doc. No. 1027, 1029.)  The same day,

both defendants filed a motion requesting appointment of counsel.  (Rec. Doc. Nos.

1028, 1030.)

On March 22, 2007, defendants jointly filed a motion for disclosure of grand

jury materials.  (Rec. Doc. No. 1031.)  On April 6, 2007, defendants jointly filed a

motion to join their § 2255 motions and all future motions.  (Rec. Doc. No. 1035.)

On April 9, 2007, we granted the request to join their § 2255 motions and all future

motions.  (Rec. Doc. No. 1036.)

On May 4, 2007, defendants jointly filed a motion to amend their § 2255 motion.  (Rec. Doc. No. 1040.  On May 24, 2007, although we had yet to rule on defendants' motion to amend, defendants jointly filed an amended § 2255 motion and a supporting brief.  (Rec. Doc. Nos. 1041-42.)

On August 20, 2007, defendant Gorge A. Winkelman filed a "Motion for Production of the Magistrate Judges' Docket Sheets."  (Rec. Doc. No. 1055.)

On October 31, 2007, the government finally filed a brief in opposition to defendants' motion under § 2255.  (Rec. Doc. No. 1062.)  On November 2, 2007, the government filed a brief in opposition to defendants' motion for the disclosure of grant jury materials.  (Rec. Doc. No. 1065.)  On November 26, 2007, defendants jointly filed a reply brief to the government's brief in opposition to their § 2255 motion.  (Rec. Doc. No. 1068.)

On December 7, 2007, defendants jointly filed a motion to compel the government to produce grand jury materials.  (Rec. Doc. No. 1069.)  The same day, defendants jointly filed a "Motion to Determine Status, of the Motion Filed by George A. Winkelman for the Production of Magistrate Judge's Docket Sheets. . ." (Rec. Doc. No. 1070.)  On December 31, 2007, defendants jointly filed a "Motion to Expand the Record to Include Additional Specific Example of the Insufficiency of the Indictment"  (Rec. Doc. No. 1072.)  On January 28, 2008, defendants jointly

filed a "Motion to Expand the Record to Include Additional Specific Example of Ineffective Assistance of Counsel." (Rec. Doc. No. 1073.)

Now, for the following reasons, the court will deny all of the defendants' motions.

**DISCUSSION:**

A motion under 28 U.S.C. § 2255 is the presumptive means by which a federal prisoner can challenge his conviction or sentence. See Davis v. United States, 417 U.S. 333, 343 (1974). A prisoner who is in custody pursuant to a sentence imposed by a federal court who believes "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255, ¶1; United States v. Eakman, 378 F.3d 294, 297-98 (3d Cir. 2004).

Defendants raise numerous grounds in their motions. Because each defendant's grounds are not necessarily the same, we will first consider each ground raised by John Winkelman, Jr. and will then turn our attention to the

4

grounds raised by George Winkelman.

## I.  John Winkelman, Jr.'s Grounds for Relief

Defendant John Winkelman, Jr. raises multiple claims in his § 2255 motion.

First, he raises thirteen ineffective assistance of counsel claims.  (Rec. Doc. No.

1023, at 19-30.)  His fourteenth claim is that his Fourth Amendment rights were

violated because the affidavit in support of the search warrant contained false

statements.  (Id. at 30-31.)  His fifteenth and sixteenth claims are Brady and Jencks

claims. (Id. at 31-34.)  His seventeenth claim is a denial of his right to confront

witnesses against him.  (Id. at 34-35.)  His eighteenth claim appears to be another

Brady claim.  (Id. at 35-36.)  His nineteenth claim is that the court erred when it

"ordered the jury once it found defendant guilty on the drugs and firearms charges,

to redeliberate and find the defendant guilty or not guilty on the Criminal

Forfeiture charge.  (Id. at 37.)  His twentieth claim is that the court erred in its

"decision to restrain the defendant from being present in the Courtroom during the

agreement of the stipulations."  (Id. at 38.)  His twenty-first claim is a conflict of

interest claim.  (Id. at 39-40.)  His twenty-second claim is that the thirteenth count

of the indictment was insufficient as failing to charge the defendant with a criminal

offense.  (Id. at 40-41.)  His twenty-third claim is that the court erred when it

granted the government's motion "to redact two letters that it received from Peter

Schuller, down to one paragraph.  And for not ordering the Government to turn

over to the defnse [sic], the two interview statements from Peter Schullers'

interviews with law enforcement."  (Id. at 41-43.)  His twenty-fourth claim is that

the court erred by "instructing the jury on a count that was not presented and

charged by the grand jury in the indictment and by reminding the jury of testimony

that was given."  (Id. at 43-44.)  His twenty-fifth claim is that the court erred

"when it sentenced the defendant to life imprisonment without the possibility of

parole, under notice of information of two prior convictions, without first

addressing the issue with the defendant before sentencing him on the prior

convictions."  (Id. at 44-45.)  His twenty-sixth and twenty-seventh claims are two

additional ineffective assistance of counsel claims based on his appeal.  (Id. at 45-

47.)

A.  Ineffective Assistance of Counsel Claims

John Winkelman, Jr. begins his petition by raising multiple ineffective

assistance of counsel claims:  1) defense counsel's failure to follow simple

courtroom procedures (Rec. Doc. No. 1023, at 11); 2) defense counsel's failure to

present a defense to the charges against the defendants (Id.); 3) defense counsel's

failure to file a motion and brief for severance of the defendants (Id.); 4) defense

counsel's failure to assure defendant's ability to contribute assistance to the

6

defense and assess settlement options by failing to provide defendant with
discovery material (Id.); 5) defense counsel's failure to request an expert witness
from the court (Id.); 6) defense counsel's failure to investigate discovery material
properly during the suppression hearing (Id. at 12); 7) defense counsel's failure to
investigate the discovery material in general (Id.); 8) defense counsel's failure to
object to various Brady and Jencks Act violations (Id.); 9) defense counsel's
decision to request a stipulation as to the guilt of an alleged coconspirator (Id.); 10)
defense counsel's decision to enter into certain stipulations with the government
without consulting with defendant (Id. at 13); 11) the cumulative effective of
counsel's failures (Id.); and 12) defense counsel's failure to investigate and
interview all individuals about which the confidential informants gave statements
(Id.).

In order to establish a claim of ineffective assistance of counsel, defendant
must establish two different components.  First, petitioner must establish that
counsel's performance was deficient.  Strickland v. Washington, 466 U.S. 668, 687
(1984).  This component is satisfied by showing that counsel's performance fell
below an objective standard of reasonableness.  Id. at 687-88.  Second, defendant
must show that this deficient performance prejudiced the outcome.  Id. at 687.
This component is satisfied upon a showing that there is a reasonable probability

7

that, but for counsel's errors, the result of the proceeding would been different.  Id.
at 694.

As for defendant's first ineffective assistance of counsel claim, he argues
that defense counsel filed five pretrial motions with the court and failed to file a
brief in support of each of these motions, allowing the government to suppress
evidence that was favorable to defendant.  (Rec. Doc. No. 1023, at 19.)  In his
brief, defendant does not even discuss which pretrial motions he is referring to and
we have reviewed the docket (which has over one-thousand entries) and we have
been unable to determine to which motions he refers.  Furthermore, even if we
were able to locate these motions, defendant presents no argument on how defense
counsel's failure to file supporting briefs with respect to various motions may have
permitted the government to suppress various exculpatory evidence and prejudiced
the outcome of the case.  In order to satisfy the prejudice prong of an ineffective
assistance of counsel claim, defendant would have to show that had defense
counsel filed supporting briefs, there was a reasonable probability that the result of
the proceeding would been different.  Strickland, 466 U.S. at 694.  In other words,
he would have to prove not only that these motions would have been successful,
but that their success would have led to a different outcome at trial.  Because
defendant has not done so, we find that defendant's first ineffective assistance of

counsel claim fails.

As for defendant's second ineffectiveness claim, he argues that defense counsel failed to investigate and present any evidence in defense to the charges against defendant.  (Id. at 19-20.)  Yet, defendant fails to present any argument that defense counsel's actions were below an objective standard of reasonableness.  The simple fact that defense counsel did not present any evidence standing alone is certainly not enough to show incompetence, as this is not an extremely uncommon event.  Such a defense occurs in the form of effective cross-examination of government witnesses, as well as arguing that the government did not meet its burden of proof.  Furthermore, defendant has not discussed what evidence defense counsel should have presented or why that evidence would have led to a different outcome at trial.  Therefore, we find that defendant's second ineffective assistance of counsel claim fails.

Defendant's third ineffective assistance of counsel claim is that defense counsel failed to file a motion and brief for severance under Rule 14 of the Federal Rules of Criminal Procedure.  (Id. at 21.)  We are confused by this argument because defense counsel did file a motion and brief for severance on March 5, 2002.  (Rec. Doc. No. 243.)  On December 6, 2002, we denied the motion after a through discussion on the merits.  (Rec. Doc. No. 495.)  Therefore, we find that

this claim fails.

Defendant's fourth ineffective assistance of counsel claim is that defense counsel failed to provide defendant with a copy of discovery material which would have permitted him to assist at trial and make an informed decision as to whether to plead guilty.  (Rec. Doc. No. 1023, at 22.)  Once again, defendant fails to provide sufficient information on this claim.  He does not discuss what discovery  material was obtained by defense counsel and not shared with defendant.  Similarly, even if there was such material, he does not discuss why counsel would be ineffective for failing to share it.  Therefore, we will deny this claim.

Defendant's fifth ineffective assistance of counsel claim is that defense counsel failed to request an expert witness from the court.  (Rec. Doc. No. 1023, at 22.)  Specifically, defendant argues that defense counsel should have requested an expert witness "to determine the debth [sic] of a Government witnesses [sic] head injury [and] whether it effected [sic] the witnesses [sic] ability to remember correctly or to remember at all."  (Id.)  Although defendant declines to mention the name of the witness, it appears that defendant refers to Lucretia Schenck, who testified that she had been in an automobile accident and was having problems with her memory.  (Tr. of June 5, 2003, Rec. Doc. No. 901, at 120.)  While Schenck was able to provide some limited testimony regarding defendants' drug dealing

operation, we do not understand how an expert would have served any more of a purpose than an effective cross examination regarding Schenck's ability to remember things after her accident.  In other words, we do not find that defense counsel's performance fell below an objective standard of reasonableness by failing to request an expert witness.  Furthermore, defendant has not presented us with any argument as to why such a request would have led to a different outcome at trial.  Although Schenck was able to provide some testimony regarding defendants' drug dealing operation, she proved unable to remember a good deal of information.  For example, she was unable to recall the number of drug transactions that she witnessed or the name of defendants' supplier of drugs  (Id. at 129, 131, 136-36, 140.)  Furthermore, she was clearly not the only government witness who testified regarding defendant's drug dealing operations.  Therefore, we find that defendant is unable to satisfy either prong of the <u>Strickland</u> standard with respect to this claim and will therefore deny it.

Defendant's sixth ineffective assistance of counsel claim is that defense counsel failed to properly investigate discovery material that was favorable to the defense during a suppression hearing.  (Rec. Doc. No. 1023, at 23.)  Specifically, defendant argues that had defense counsel investigated this material, illegally obtained evidence would have been suppressed.  (Id.)  Once again, we will reject

defendant's argument.  In an ineffective assistance of counsel claim based on the failure to have evidence suppressed under the Fourth Amendment, "the defendant must [] prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice."  Kimmelman v. Morrison, 477 U.S. 365, 375 (1986).  Defendant has not made such a showing.  He presents no arguments as to why his Fourth Amendment claim was meritorious.  As with his other claims, he simply makes the bald assertion that it was meritorious.  Therefore, we will reject this claim.

Defendant's seventh ineffective assistance of counsel claim is that defense counsel failed to investigate discovery material that was provided to him on or about March 31, 2003.  (Rec. Doc. No. 1023, at 24.)  This claim is rather confusing.  Defendant first states that had defense counsel investigated this material, "he would not have filed the meritless motion to dismiss the indictment on the grounds of false or perjured testimony before the grand jury."  (Id. at 24-25.)  Then, defendant states that this material "prove[s] that a witness for the Government committed perjury up to 35 times before the grand jury to obtain the indictment" and that "[t]his witness was the only witness to testify before this grand jury to obtain the original indictment."  (Id. at 25.)  Defendant further argues

12

that had defense counsel investigated this material, "he would have filed a motion and brief, which addressed all of the perjury and the improprieties by law enforcement." (Id.) Thus, it is not clear to us whether defendant is alleging that defense counsel's failure was due to the filing of a motion or not filing of a motion. In reviewing the docket, it appears that defense counsel did file a motion and supporting brief to dismiss the indictment based on false or perjured testimony on March 29, 2003. (Rec. Doc. Nos. 682-83.) On June 3, 2003, we denied the motion. (Rec. Doc. No. 698.) Even if we were to conclude that this motion was so meritless and that it was incompetent to file it, we do not understand how defendant would be able to satisfy the prejudice prong under Strickland based on defense counsel's filing of the motion. To the extent he challenges that defense counsel failed to file a motion that may have resulted in a dismissal of the indictment, we note that defendant fails to provide any evidence which supports his allegation that a witness committed perjury before the grand jury. Thus, with respect to the latter scenario, we find that defendant is unable to satisfy either prong of the Strickland test. Therefore, we will once again reject defendant's claim.

Defendant's eighth ineffective assistance of counsel claim is that defense counsel was ineffective for not objecting to "the obvious Brady and Jencks Act

violations" that occurred throughout this case.  (Rec. Doc. No. 1023, at 25.)

Specifically, defendant states that several witnesses testified that "someone was

taking notes of what they were stating, during their interviews" and that a "law

enforcement witness clearly stated that he was ordered by his superior officer to

destroy the rough notes of interviews with witnesses."  (Id. at 25-26.)  Firstly,

defendant once again does not point towards any evidence in the record to support

these allegations.  He clearly is referring to portions of the trial transcript without

actually providing any citations.  We are not pigs searching for truffles and are

unwilling to search through the massive record that has been developed in this case

to find evidence of these alleged violations.  Furthermore, even if we assume that

notes were destroyed and that it was incompetent not to object to this, defendant

once again has not presented any arguments as to why the outcome at trial would

have been different had defense counsel objected.  Therefore, we will once again

reject defendant's claim.

Defendant's ninth ineffective assistance of counsel claim is that defense

counsel failed to discuss or consult with defendant on any aspect of the case or

provide defendant with discovery material in order to allow defendant to assist in

his own defense.  (Rec. Doc. No. 1023, at 27.)  Thus, this ineffectiveness claim

closely mirrors defendant's fourth ineffectiveness claim, in which he argued that

defense counsel failed to provide defendant with a copy of discovery material which would have permitted him to assist at trial and make an informed decision as to whether to plead guilty.  (<u>Id.</u> at 22.)  We will deny this claim for the same reasons that we denied his fourth ineffectiveness claim.  Defendant does not discuss which discovery material defense counsel obtained but did not share with defendant.  Therefore, we are unable to determine whether the first prong of the <u>Strickland</u> standard was violated.  Thus, we will reject defendant's ninth ineffective assistance of counsel claim.

Defendant's tenth ineffective assistance of counsel claim is that defense counsel was ineffective for "requesting the Court for a stipulation as to the guilt of an alleged co-conspirator." (Rec. Doc. No. 1023, at 27.)  Specifically, defendant argues that "this stipulation clearly suggested the defendants' guilt to the jury and was very prejudicial to the defendant."  (<u>Id.</u> at 28.)  First, although defendant declines to mention to which coconspirator he refers, he alludes to the fact that this coconspirator plead guilty.  (<u>Id.</u> at 27.)  Thus, it is hard to imagine how stipulating to the guilt of a coconspirator who has pled guilty could be ineffective or prejudice the outcome.  If defense counsel declined to enter into such a stipulation, it would not be difficult for the government to prove the coconspirator's guilt.  Therefore, we will deny this ineffectiveness claim.

Defendant's eleventh ineffective assistance of counsel claim is that defense counsel was ineffective by "entering into an agreement with the Government, by signing stipulations that would be entered into evidence before the trial jury, without first consulting or discussing these stipulations with the defendant."  (Rec. Doc. No. 1023, at 28.)  Once again, we find these allegations too vague to allow us to carefully consider them.  Defendant does not specifically discuss any stipulations.  To the extent this argument is based on the stipulation of a coconspirators guilt that was discussed in the previous paragraph, we do not believe it would be incompetent for an attorney to make such a decision without discussing it with his or her client.  A defense counsel is certainly not required to discuss every single aspect of the case with his or her client.  Furthermore, even if it could be considered incompetent, doing so would not affect the outcome of the trial.  Therefore, we will reject defendant's eleventh ineffective assistance of counsel claim.

Defendant's twelfth ineffective assistance of counsel claim is that the cumulative effect of all of these failures resulted in prejudice to the defendant. (Rec. Doc. No. 1023, at 28-29.)  The Third Circuit stated in dicta that a district court may considered the cumulative effect of multiple ineffective assistance of counsel claims if none on its own is sufficient to rise to a constitutional violation.

See United States ex rel. Sullivan v. Cuyler, 631 F.2d 14, 17 (3d Cir. 1980) (stating that "unified consideration of the claims in the petition well satisfies the interests of justice because the cumulative effect of the alleged errors may violate due process").  Yet, in the instant case, we have yet to find a single instance of incompetence, so the cumulative effect is the equivalent of adding multiple zeros. Therefore, we will reject defendant's twelfth ineffectiveness claim.

Defendant's final ineffective assistance of counsel claim is that defense counsel was ineffective for "not investigating or interviewing all of the other individuals that the confidential informants and Daniel Werts gave statements about or testified about."  (Rec. Doc. No. 1023, at 29.)  We once again find this conclusory allegation to be too vague to meaningfully respond.  Defendant does not provide any arguments discussing why these confidential informants should have been investigated or interviewed aside from stating that they "were clearly potential witnesses for the defense."  Such a bald assertion without more is not sufficient to require discovery or an evidentiary hearing and we will deny this claim.  See Zettlemoyer v. Fulcomer, 923 F.2d 284, 301 (3d Cir. 1991) (citations omitted) (stating that "bald assertions and conclusory allegations do not provide sufficient ground to warrant requiring the state to respond to discovery or to require an evidentiary hearing").

17

B.  Fourth Amendment Claim

Defendant claims that his Fourth Amendment rights were violated because the affidavit for the search warrant contained false statements.  (Rec. Doc. No. 1023, at 30-31.)  As the government correctly argues, this argument was not raised on appeal and is therefore procedurally defaulted.  (Rec. Doc. No. 1062, at 46.)  An issue that could have been raised on direct appeal but was not is subject to procedural default unless the defendant shows cause and prejudice.  Massaro v. United States, 538 U.S. 500, 504 (2003) (citing United States v. Frady, 456 U.S. 152,167-68 (1982)).  There is nothing that indicates that any of the information required to present this claim was obtained after the direct appeal.  Therefore, we will deny the claim on procedural default grounds.

Even considering the merits of this argument, this claim is easily rejected. Defendant has not presented any evidence that any of the statements in the affidavit were false.  Furthermore, we note that defendant John Winkelman raised an identical challenge in a pretrial motion to suppress and we ruled after a two-day hearing that such an argument failed because of a lack of evidence concerning the falsity of the statements in the affidavit.  (Rec. Doc. No. 624.)  Defendant has not presented any evidence that would change reasoning from that ruling and we find that the claim fails.

C.  Brady and Jencks Claims

In his fifteenth and sixteenth claims, defendant raises various Brady and

Jencks claims. (Rec. Doc. No. 1023, at 31-34.)  Similarly, his eighteenth

essentially appears to set forth Brady claims.  (Id. at 35-38.)  In Brady v. Maryland,

the Supreme Court held that "the suppression by the prosecution of evidence

favorable to an accused upon request violates due process where the evidence is

material either to guilt or to punishment, irrespective of the good faith or bad faith

of the prosecution."  373 U.S. 83, 87 (1967).  Furthermore, the Supreme Court has

extended this rule beyond exculpatory evidence to include impeachment evidence

that may go to the credibility of a crucial prosecution witness.  Giglio v. United

States, 405 U.S. 150, 154 (1972).  Additionally, the prosecutor has a duty to

volunteer evidence even in the absence of a request by the defense if the evidence

is "obviously of such substantial value to the defense that elementary fairness

requires it to be disclosed."  United States v. Agurs, 427 U.S. 97, 110 (1976).

Furthermore, the duty of disclosure is not limited to evidence the prosecutor is

aware of; it includes evidence known only to police investigators and not to the

prosecutor.  Smith v. Holtz, 210 F.3d 186, 195 (3d Cir. 2000) (quoting Kyles v.

Whitley, 514 U.S. 419, 438 (1995)).  In order to state a valid Brady claim, the

evidence must be material in that "the favorable evidence could reasonably be

taken to put the whole case in such a different light as to undermine confidence in the verdict." Hollman v. Wilson, 158 F.3d 177, 181 (3d Cir. 1998) (citing Kyles, 514 U.S. at 435). In determining materiality, we must look at the cumulative effect of multiple non-disclosures, rather than an item-by-item review. Marshal v. Hendricks, 307 F.3d 36, 62-63 (3d Cir. 2002).

Similarly, the Jencks Act provides, in relevant part, that "[i]n any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness ... shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination . . ." 18 U.S.C. § 3500(a).

As for defendant's first Brady claim, defendant argues that the government withheld the affidavit of probable cause for the search warrant for fourteen months. (Rec. Doc. No. 1023, at 31-32.) First, we agree with the government that this claim has been procedurally defaulted. (Rec. Doc. No. 1062, at 46.) It is not the case of a Brady allegation in which the defendant has come across evidence long after the direct appeal so there was no opportunity to present the claim on appeal. Furthermore, even if we consider the merits of defendant's claim and accept defendant's assertion that the government withheld this material from him for fourteen months, we do not understand how this conduct is sufficient to undermine

confidence in the verdict.  As we have already mentioned, the allegedly false

statements in support of the affidavit of probable cause were challenged in a

motion to suppress by defendant John A. Winkelman, which was followed by a

two-day hearing on the motion and a denial of the motion by a lengthy

memorandum and order dated April 17, 2003.  (Rec. Doc. No. 624.)  In other

words, even if there was some delay in turning over these materials, it still appears

that defendant did receive them and had an opportunity to present a challenge to

the search warrant.  Therefore, we will deny defendant's first Brady claim.

Defendant's second Brady claim is that the government failed to disclose

witnesses' prior statements and notes from interviews with witnesses.  (Rec. Doc.

No. 1023, at 33.)  Defendant also asserts that this was a violation of the Jencks Act.

(Id.)  As a preliminary matter, we note that defendant's assertions are simply

conclusory allegations.  Defendant does not provide any evidence that the

government failed to disclose Brady or Jencks material.  Furthermore, even if we

were to assume that the government did fail to disclose such material, defendant

does not discuss what this evidence contains or why it is sufficient to undermine

our confidence in the verdict.  See Blackledge v. Allison, 431 U.S. 63, 74 (1977)

(citations omitted) (stating that "[t]he subsequent presentation of conclusory

allegations unsupported by specifics is subject to summary dismissal, as are

contentions that in the face of the record are wholly incredible"). Therefore, we will reject defendant's second <u>Brady</u> claim.

As mentioned, defendant's eighteenth claim also appear to present <u>Brady</u> claims as well. (Rec. Doc. No. 1023, at 35-39.) His eighteenth claim alleges that "the government clearly violated his <u>Brady</u> right by suppressing law enforcements [sic] prior testimony and statements until approximately twenty days after the defendants [sic] suppression hearing ended." (<u>Id.</u> at 36.) Once again, it appears that this claim was procedurally defaulted when it was not presented on direct appeal. By his own admission, defendant received these documents prior to his trial and appeal and this challenge could have been raised at either. Furthermore, even if we consider the merit of this argument and accept defendant's allegations as true, he once again does not discuss what this evidence suggests or why it is sufficient to undermine our confidence in the verdict. Therefore, we will deny this claim as well.

## D.  Confrontation Clause Claim

Defendant's seventeenth claim is a denial of his right to confront witnesses against him. (<u>Id.</u> at 34-35.) Specifically, he argues that "the trial Court continually permitted the Government to present hearsay evidence, in the form of testimony that was given by individuals that testified for the Government in its case-in-chief."

(Id. at 34.)  We believe that this claim has clearly been procedurally defaulted.

Any objection to such evidence should have been presented at trial and the failure

to do so constitutes a procedural default.  Furthermore, we note that defendant does

not allege that defense counsel's failure to object rendered him ineffective

(although he does argue that his appellate counsel was ineffective for failing to

raise every issue raised by defendant in his § 2255 motion).  It is worth noting that

defendant's argument simply argues that the government presented hearsay

evidence, without actually pointing to any such evidence in the record.  Even if the

issue was properly before us, we do not understand how we would be expected to

analyze this issue without defendant's specifically pointing towards specific

instances of hearsay.  As we have mentioned, we are not willing to review the

massive trial transcript in this case to search for an  instance of hearsay which

defendant alleges exists.  Therefore, we will reject this claim.

## E.  Rule 52(b) of the Federal Rules of Criminal Procedure Claims

Defendant's nineteenth, twentieth, twenty-third, twenty-fourth, and twenty-

fifth claims are based on Rule 52(b) of the Federal Rules of Criminal Procedure.

(Id. at 37-39.)  Specifically, his nineteenth claim argues that the court erred when it

"ordered the jury once it found defendant guilty on the drugs and firearms charges,

to redeliberate and find the defendant guilty or not guilty on the Criminal

Forfeiture charge.  (Id. at 37.)  His twentieth claim is that the court erred in its

"decision to restrain the defendant from being present in the Courtroom during the

agreement of the stipulations."  (Id. at 38.)  His twenty-third claim is that the court

committed an error when it granted the government's motion "to redact two letters

that it received from Peter Schuller, down to one paragraph.  And for not ordering

the Government to turn over to the defnse [sic], the two interview statements from

Peter Schullers' interviews with law enforcement."  (Id. at 41-43.)  His twenty-

fourth claim is that the court erred by "instructing the jury on a count that was not

presented and charged by the grand jury in the indictment and by reminding the

jury of testimony that was given."  (Id. at 43-44.)  His twenty-fifth claim is that the

court erred "when it sentenced the defendant to life imprisonment without the

possibility of parole, under notice of information of two prior convictions, without

first addressing the issue with the defendant before sentencing him on the prior

convictions."  (Id. at 44-45.)

Once again, we believe that these claims have been procedurally defaulted.

It does not appear that any objection was made at trial or on direct appeal to these

issues and there exists no excuse for such a failure.  Furthermore, even if we

consider the merits of each argument, they are easily rejected.

As for his argument concerning the criminal forfeiture charge, he essentially

appears to argue that the third superceding indictment did not contain a criminal forfeiture charge so such a charge did not exist.  (Id. at 37.)  Such a claim is simply untrue.  Count Sixteen of the third superceding indictment contains a forfeiture charge.  (Rec. Doc. No. 621, at 15.)  Therefore we will reject this claim.

As for his claim that the court erred in not allowing defendant in the courtroom when defense counsel entered into stipulations with the government, we will also reject this claim.  First, we are not aware of any evidence that suggests that defendant was not present for the stipulation.  Defendant certainly has not pointed towards any portion of the record that suggests that this is the case.  Furthermore, the stipulation that defendant appears to refer to is the same stipulation that he raised in his tenth ineffective assistance of counsel claim.  (Rec. Doc. No. 1023, at 27.)  This stipulation concerned the guilt of an alleged co-conspirator."  (Id.)  As we mentioned, this coconspirator pled guilty so we do not understand why defendant would not want to enter into such a stipulation.  Therefore, even if defendant was not in the courtroom for this stipulation and it was an error for this to occur, we do not understand how defendant would be able to show that he was prejudiced by this error.  Therefore, we will reject this claim.

Defendant's next claim is that the court committed an error when it granted the government's motion "to redact two letters that it received from Peter Schuller,

down to one paragraph.  And for not ordering the Government to turn over to the defnse [sic], the two interview statements from Peter Schullers' interviews with law enforcement."  (Id. at 41-43.)  We will again reject this claim.  On June 12, 2003, we entered an order which provided defendants with a redacted version of a letter from Peter Schuller that was dated January 4, 2002 because we found that it contained evidence that may be exculpatory and material.  (Rec. Doc. No. 715.)  Because defendants had no right to portions of the record that were not exculpatory and material, we redacted those portions of the letter.  With respect to the interview notes, we found that they were not exculpatory and material and declined to provide defendants with a copy of them.  Defendant's instant claim does not convince us that our reasoning in the June 12, 2003 order was in error.  Defendant did not have any right to materials that were not <u>Brady</u> material and we will therefore reject this claim.

Defendant's next claim is that the court erred by "instructing the jury on a count that was not presented and charged by the grand jury in the indictment and by reminding the jury of testimony that was given."  (Rec. Doc. No. 1023, at 43-44.)  We have been unable to find any count that was presented to the jury that was not included in the indictment.  Similarly, we are unable to make sense of defendant's argument that we reminded the jury of testimony that was given when

we gave the jury instructions.  As usual, defendant has not pointed towards any evidence in the record to support his assertions and we will therefore deny the claim.

Finally, defendant claims that the court erred "when it sentenced the defendant to life imprisonment without the possibility of parole, under notice of information of two prior convictions, without first addressing the issue with the defendant before sentencing him on the prior convictions."  (<u>Id.</u> at 44-45.)  With respect to this issue, he not surprisingly alleges that he received ineffective assistance of counsel during the proceedings that led to each of the prior convictions.  (<u>Id.</u> at 34.)  Furthermore, he argues that he "clearly objected to the use of the two alleged prior convictions, before sentencing, but was not afforded a hearing on this issue."  (<u>Id.</u>)  With respect to the ineffectiveness claim, we note that the proper avenue of relief would be to challenge the conviction in the court where it was obtained.  As for his claim that he was not afforded a hearing, we note that the government gave notice of the use of two prior convictions on March 31, 2003. (Rec. Doc. No. 615.)  Although defendant contends that he objected to the use of these convictions, we have not been directed to any objection in the record to the use of these convictions.  Therefore, no hearing was required under the statute. Therefore, we will deny this claim.

F.  Conflict of Interest Claim

Defendant's twenty-first claim is a conflict of interest claim.  (Id. at 39-40.)

Specifically, defendant argues that "defendants', codefendants' trial attorney

created a conflict of interest during the questioning of a Government witness,

Shannon Bruno Winkelman [when] the witness denied making certain statements

to him in his office on or about October 27, 2001."  (Id. at 39.)  Therefore,

defendant argues that he became a witness for the defense and should have

withdrawn.  (Id.)  Although this claim contains substantially more detail than the

majority of defendant's other claims because it contains a name and a date, we

nevertheless conclude that it must be denied.

The Sixth Amendment guarantee of effective assistance of counsel includes

a right to an attorney with undivided loyalty free of any conflicts of interest.

Government of Virgin Islands v. Zepp, 748 F.2d 125, 131 (3d Cir. 1984).  "When

an attorney's representation is corrupted by conflicting interests, he or she

'breaches the duty of loyalty, perhaps the most basic of counsel's duties.'"  Hess v.

Mazurkiewicz, 135 F.3d 905, 910 (3d Cir. 1998) (quoting Strickland v.

Washington, 466 U.S. 668, 692 (1984).  Furthermore, counsel free of conflict is

necessary for the type of assistance of counsel required by the Sixth Amendment,

which is one that puts the government to its proofs in an adversarial manner.

28

United States v. Cronic, 466 U.S. 648, 656 (1984).

In an ineffective assistance of counsel claim based on a conflict of interest, counsel is ineffective if an actual conflict exists and the conflict adversely affects counsel's performance.  Cuyler v. Sullivan, 446 U.S. 335, 350 (1980).  An actual conflict exists when if "during the course of representation, the defendants' interests diverge with respect to a material factual or legal issue or to a course of action."  United States v. Gambino, 864 F.2d 1064, 1070 (3d Cir. 1988) (citation omitted).  The conflict adversely affects counsel's performance if the actual conflict must cause "some lapse in representation contrary to the defendant's interests but such lapse need not rise to the level of actual prejudice."  Gambino, 864 F.2d at 1070.  Furthermore, prejudice is presumed when counsel is burdened by an actual conflict of interest with an adverse effect.  Id. at 349 (stating that a defendant "who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice. . .");  see Holloway v. Arkansas, 435 U.S. 475, 487 (1978) (citing Glasser v. United States, 315 U.S. 60, 75-76 (1942)).

We do not believe that defendant's claim rises to the level of a Sixth Amendment violation.  The fact that defense counsel may have been able to provide testimony that would impeach the witness does not create a conflict of

interest under the Sixth Amendment.  As we mentioned, an actual conflict exists

when there is a divergence of interests.  There is nothing to suggest that there was a

divergence of interests in this case.  In other words, it was not as though defense

counsel was attempting to serve some competing interest that caused him or her to

not be representing defendant with undivided loyalty.  Rather, we assume that

defense counsel elected to make the strategic decision of dealing with any alleged

falsity in the witness' testimony by an effective cross-examination .  Therefore, we

find that no conflict of interest existed and will deny this claim.

G.  Sufficiency of Count Thirteen of the Third Superceding Indictment

His twenty-second claim is that the thirteenth count of the third superceding

indictment was insufficient as failing to charge the defendant with a criminal

offense.  (Id. at 40-41.)  This claim obviously should have been presented at trial

and on direct appeal and the failure to do so constitutes a procedural default.

Furthermore, even if we consider the merits of this argument, it is easily rejected.

Count Thirteen of the third superceding indictment charged defendant with 18

U.S.C. § 924(c)(1)(A), which states that:

> Except to the extent that a greater minimum sentence is otherwise
> provided by this subsection or by any other provision of law, any
> person who, during and in relation to any crime of violence or drug
> trafficking crime (including a crime of violence or drug trafficking
> crime that provides for an enhanced punishment if committed by the
> use of a deadly or dangerous weapon or device) for which the person

may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime–

    (I)    be sentenced to a term of imprisonment of not less than 5 years;

    (ii)    if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and

    (iii)    if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.

Defendant argues that the indictment charged him with using, carrying, and possessing a firearm in relation to and in furtherance of a drug trafficking crime, which is not sufficient under the statute.  (Rec. Doc. No. 1023, at 41.)  Specifically, defendant's confusing and nonsensical argument is that § 924(c)(1)(A) is only to be applied when a defendant used and carried a firearm during and in relation to a crime of violence or a drug trafficking offense OR when a defendant possessed a firearm in relation to a crime of violence or a drug trafficking crime.  (Id. at 40.) We will reject defendant's claim.  Count Thirteen of the third superceding indictment charges defendant with more than is required to state a crime under § 924(c)(1)(A).

## H.  Ineffective Assistance of Counsel Claims Based on Direct Appeal

Defendant's final two claims are ineffective assistance of counsel claims

based on his appeal.  His first claim is that his appellate counsel failed to

investigate the complete record of this case.  (Rec. Doc. No. 1023, at 45-46.)  His

second claim is that his appellate counsel was ineffective because he failed to

present all of the arguments that defendant has presented in his § 2255 motion.  (Id.

at 47-48.)  Both claims fail.  With respect to his first claim, we find it to be yet

another example of a conclusory allegation.  Defendant has not stated what

portions of the record appellate counsel failed to investigate or why investigating

those portions would have led to a different result on appeal.  With respect to the

second claim, we will similarly deny it.  We find that it was not ineffective to fail

to raise the issues raised by defendant in his § 2255 motion.  Although we have

ruled that many of these issues were procedurally defaulted, we have also

addressed each issue on the merits and found that each claim fails.  Thus, we

conclude that raising each of these claims on direct appeal would have been futile

and failing to do so cannot form the basis of an ineffective assistance of counsel

claim.


## II.  George A. Winkelman's Grounds for Relief

Defendant George A. Winkelman's brief raises nearly identical claims as

defendant John F. Winkelman, Jr.  (Rec. Doc. No. 1021.)  In total, he raises

twenty-seven claims.  The first thirteen claims are ineffective assistance of counsel claims.  (Id. at 22-41.)  Each of these claims is identical to defendant John F. Winkelman's claims except for his twelfth claim, which alleges that defense counsel was ineffective for "not objecting to the Governments' use of the illegally obtained listening device to gain the indictment against the defendant."  (Id. at 37-39.)  Defendant's fourteenth claim is that his Fourth Amendment rights were violated because the affidavit for the search warrant contained false statements, which is also identical to John Winkelman's Fourth Amendment claim.  (Id. at 41-42.)  His fifteenth claim is a Brady and Jencks claim and appears to be identical to John Winkelman's fifteenth claim.  (Id. at 42-44.)  His sixteenth claim is a denial of his right to confront witnesses against him and is identical to John Winkelman's seventeenth claim.  (Id. at 44-46.)  His seventeenth claim appears to be another Brady claim and is identical to John Winkelman's eighteenth claim.  (Id. at 46-48.)  His eighteenth claim is a conflict of interest claim and is identical to John Winkelman's twenty-first claim.  (Id. at 48-49.)  His nineteenth claim is that the court erred in not permitting him to be present in the court room during the agreement of the stipulations and is identical to John Winkelman's twentieth claim. (Id. at 49-50.)  His twentieth claim is that the third superceding indictment failed to charge defendant with a criminal offense and was raised by John Winkelman in his

twenty-second claim.  (<u>Id.</u> at 50-52.)  His twenty-first claim is that the court erred

when it redacted information from a letter received from Peter Schuller and is

identical to John Winkelman's twenty-third claim.  (<u>Id.</u> at 52-54.)  His twenty-

second claim is that the court erred when it ordered the jury to deliberate and find

defendant guilty or not guilty of the criminal forfeiture charge and is identical to

John Winkelman's nineteenth claim.  (<u>Id.</u> at 54-55.)  His twenty-third claim is that

the court erred by instructing the jury on a count that was not presented and

charged by the grand jury in the indictment and by reminding the jury of testimony

that was given and is identical to John Winkelman's twenty-fourth claim.  (<u>Id.</u> at

55-56.)  His twenty-fourth claim appears to be another <u>Brady</u> and Jencks claim and

is identical to John Winkelman's sixteenth claim.  (<u>Id.</u> at 57-58.)  His twenty-fifth

claim is that the government presented false and misleading testimony to the grand

jury in violation of defendant's due process rights and does not appear to be

identical to any of John Winkelman's claims.  (<u>Id.</u> at 58-64.)  His twenty-sixth and

twenty-seventh claims are ineffective assistance of counsel claims based on his

appellate counsel's performance on appeal and are identical to John Winkelman's

twenty-sixth and twenty-seventh claims.  (<u>Id.</u> at 64-66.)

## A.  Identical Claims

We find that there is no need to repeat our analysis for the claims of

defendant George Winkelman that are identical to John Winkelman's claims.  We

have throughly analyzed each of these claims in the previous section of this

opinion.  Furthermore, we have carefully reviewed defendant George Winkelman's

arguments to determine if they present anything that would change our previous

analysis and found that they do not.  Therefore, we will deny all claims presented

by defendant George Winkelman that are identical to those claims by John

Winkelman, which amounts to all of George Winkelman's claims except his

twelfth and twenty-fifth claims.

B.  Ineffective Assistance of Counsel Claim

As mentioned, defendant raises one ineffective assistance of counsel claim

that was not raised by defendant John Winkelman.  Defendant argues that defense

counsel was ineffective for "not objecting to the Governments' use of the illegally

obtained listening device to gain the indictment against the defendant."  (Id. at 37-

39.)  Specifically, defendant contends that "[18 U.S.C. § 2518(1)(c)] provides that

once normally investigative technics [sic] have been tried and succeeded, it was

illegal for law enforcement to apply, obtain and use this device."  (Id. at 38.)  We

find this argument fails.  As a preliminary matter, we note that the government

argues that no electronic listening device was used in this case and that defendant's

argument is simply untrue.  (Rec. Doc. No. 1062, at 44.)  Based on defendant's

complete failure to present any evidence that such a device was used and our failure to find any, we must agree with the government.  Therefore, we conclude that defendant's claim fails.

## C.  Presentation of False and Misleading Testimony to the Grand Jury

Defendant's twenty-fifth claim is that the government presented false and misleading testimony to the grand jury in violation of defendant's due process rights.  (Rec. Doc. No. 1021, at 58-64.)  As with many of the claims presented by both defendants in their § 2255 motions, we find that defendant's claim is simply a conclusory allegation with no factual support.  Defendant does not point towards any evidence to suggest that perjury was committed or that the government knew of the perjury.  See Zettlemoyer v. Fulcomer, 923 F.2d 284, 301 (3d Cir. 1991) (citations omitted) (stating that "bald assertions and conclusory allegations do not provide sufficient ground to warrant requiring the state to respond to discovery or to require an evidentiary hearing").  Therefore, we will deny this claim.

### III.  Defendants' Motion of Amended Grounds

On May 4, 2007, defendants jointly filed a motion to amend their § 2255 motion.  (Rec. Doc. No. 1040.)  Although we did not rule on this motion, defendants nevertheless went ahead and jointly filed an amended § 2255 motion and a supporting brief.  (Rec. Doc. Nos. 1041-42.)  We have briefly reviewed the

motion and supporting brief and found that it is nearly identical to defendant's individual § 2255 motions, which as we have mentioned are nearly identical themselves.

Defendants did not obtain our permission to file this amended motion. In fact, although they filed a motion to amend, they did not file a brief in support of that motion as required by Local Rule 7.5 of the Middle District of Pennsylvania. This rule requires a supporting brief to be filed within ten days of the filing of any pretrial motion. Id. The rule further states that if a supporting brief is not filed within ten days, the motion shall be deemed to be withdrawn, unless the motion is for an enlargement of time, appointment of counsel, or the motion has concurrence of all counsel. Id. Thus, because this motion did not contain a supporting brief, it shall be deemed withdrawn.

Even if we were to consider the merits of defendants' motion to amend, we conclude that it should be denied. As a preliminary matter, we note that after both defendants filed their original § 2255, we issued a notice of election which informed defendants that they could elect to have the court rule on their motions as filed or withdraw the motions to file an all-inclusive motion. Defendants evidently desired to do both, not one or the other. They have attempted to have us both rule on their motions as filed and to file an additional motion and have us rule on that as

37

well.  If defendants did not believe their original motions included all of their

grounds they wished to raised, they simply should have elected to withdraw their

motion and file their all-inclusive motion.  Furthermore, we note that our notice of

election specifically indicated to both defendants that if they elect to have their

motion ruled on as filed, they may be forever barred from filing a second or

successive motion.  (Rec. Doc. Nos. 1024-25.)  Both defendants indicated in their

election that they understood that they "may be forever barred from presenting in

federal court any claim not presented in this motion."  (Rec. Doc. Nos. 1027,

1029.)

 Furthermore, we note that this motion of amended grounds does not stand

alone.  Rather, it appears to amend some of the claims from each defendant's

original motion while leaving some of the claims from each original motion intact.

In other words, it is nearly impossible to read because it requires that the court

review three lengthy documents to determine which claims from the original

motions have survived the motion of amended grounds.  Finally, we reiterate that

we have thoroughly analyzed each of the claims presented by each defendant in

their original motions and concluded that every claim is entirely lacking in merit.

We see nothing that would indicate that the motion of amended grounds would be

any different.  Therefore, for all of these reasons we have just mentioned, we

believe that it would be a waste of judicial resources to attempt to review the motion of amended grounds.

### IV.  Defendants' Motion for the Disclosure of Grand Jury Materials

On March 22, 2007, defendants jointly filed a motion for disclosure of grand jury materials.  (Rec. Doc. No. 1031.)  In their motion, defendants request different material from the grand jury, such as the date the grand jury was impaneled and dismissed, the decision that was made by the grand jury, a copy of the jury instructions and opening statements that were given to the grand jury, a list of the names of everyone who was present in the grand jury room during the investigation of the case aside from the witnesses and grand jurors, and any and all information and evidence that was transferred from the state grand jury to the federal grand jury.  (Rec. Doc. No. 1031, at 6-8.)  Defendants assert that this evidence "will add to the evidence that is already in their possession and will help to show this Honorable Court, the extreme prejudice and bias that was afforded the defendants'" and will "also give this Honorable Court an accurate picture of the numerious [sic] Constitutional violations that were afforded the defendants'."  (Id. at 6.)

The Supreme Court has stated that a habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of course.  Bracy v.

Gramley, 520 U.S. 899, 904 (1997).  Yet, discovery is not precluded entirely and

Rule 6 of the Rules Governing Section 2255 Proceedings allows a court to

"authorize a party to conduct discovery" if the party is able to show "good cause"

for the documents requested.  We do not believe that defendants have shown "good

cause" for the disclosure of the materials.  Rather, we agree with the government

that defendants appear to be on a fishing expedition seeking any evidence that may

help their habeas claims.  Therefore, we find that the motion must be denied on

these grounds.

Furthermore, we believe the Federal Rules of Criminal Procedure governing

grand jury proceedings also warrants denial of the motion.  Rule 6 governs the

disclosure of grand jury materials and establishes a presumption of non disclosure.

McDonnell v. United States, 4 F.3d 1227, 1246-47 (3d Cir. 1993).  Because

defendants do not allege any grounds for disclosure of the grand jury materials

under Rule 6(e), we find that the claim must similarly be denied.

### V.  Defendants' Motions for Appointment of Counsel

Each defendant has filed a motion for appointment of counsel.  (Rec. Doc.

Nos. 1028, 1030.)  There is no absolute constitutional right to appointment of

counsel in a federal habeas proceeding.  Coleman v. Thomson, 501 U.S. 722, 757

(1991).  However, under 18 U.S.C. § 3006A(a)(2), representation may be provided

for an indigent petitioner in a federal habeas claim when "the interests of justice so require."

In Tabron v. Grace, the Third Circuit announced the factors that are to be considered by a district court in deciding whether to exercise its discretion and appoint counsel to an indigent litigant in a civil case.  6 F.3d 147, 153 (3d Cir. 1993), cert. denied, 510 U.S. 1196 (1994)  Although the Third Circuit in Tabron was applying 28 U.S.C. § 1915(e)(1), several courts have held that the factors set out by the Third Circuit are equally applicable to 18 U.S.C. § 3006A(a)(2), which pertains to appointment of counsel in habeas proceedings.  Kotey v. Gonzalez, Civ. No. 07-1136, 2007 WL 951436, at * 1 (D.N.J. 2007) (Linares, J.); Santos v. Diguglielmo, Civ. No. 06-2471, 2007 WL 675351, at * 1-2 (M.D.Pa. 2007) (Mannion, M.J.).

Under Tabron, the first consideration by a district court should be whether the petitioner's claim has "some merit in fact and law."  Parham v. Johnson, 126 F.3d 454, 457 (3d Cir. 1997) (citing Tabron, 6 F.3d at 157).  Only after determining that the claim has some merit should the court consider these six additional factors:  (1) the plaintiff's ability to present his or her own case; (2) the complexity of the legal issues; (3) the degree to which factual investigation will be necessary and the plaintiff's ability to pursue such an investigation; (4) the amount

a case is likely to turn on credibility determinations; (5) whether the case will

require the testimony of expert witnesses; and (6) whether the plaintiff can obtain

and afford counsel on his own behalf.  Id. at 457-58 (citing Tabron, 6 F.3d at

155-56, 157 n. 5).

We do not believe either defendant is able to satisfy the threshold factor of

showing that his claims have some merit in both law and in fact.  We have already

extensively reviewed each of defendant's claims and found them to be entirely

lacking in merit as to both law and fact.  Therefore, we will deny each defendant's

request for appointment of counsel.

## VI.  Defendants' Other Motions

Defendants have also filed various other motions with respect to their § 2255

motions.  Defendant Gorge A. Winkelman has filed a "Motion for Production of

the Magistrate Judges' Docket Sheets."  (Rec. Doc. No. 1055.)  Defendants jointly

have filed a motion to compel the government to produce grand jury materials

(Rec. Doc. No. 1069), a "Motion to Determine Status, of the Motion Filed by

George A. Winkelman for the Production of Magistrate Judge's Docket Sheets. . ."

(Rec. Doc. No. 1070), a "Motion to Expand the Record to Include Additional

Specific Example of the Insufficiency of the Indictment"  (Rec. Doc. No. 1072),

and a "Motion to Expand the Record to Include Additional Specific Example of

Ineffective Assistance of Counsel" (Rec. Doc. No. 1073).

As for Rec. Doc. Nos. 1072 and 1073, these motions seek to supplement their § 2255 motions and raise new claims. Therefore, we find that they must be denied for the same reason we decline to permit defendants to amend their motion. As for Rec. Doc. Nos. 1055, 1069, and 1070, these motion appear to seek discovery. We find that they must be denied for the same reason we denied defendants' request for the production of grand jury materials. Defendants have not made the initial showing of good cause with respect to any of these motions that would warrant granting the motion and providing defendants with discovery. Therefore, we will deny the motions.

**CONCLUSION:**

For all of the reasons we have discussed, we find that each of the

defendant's motions under § 2255 must be denied.  Similarly, we will deny all the

additional motions that have been filed by defendants.


   s/ James F. McClure, Jr.
JAMES F. McCLURE, JR.
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | No. 4:CR-01-304 |
| | : | No. 4:CV-07-348 |
| GEORGE A. WINKELMAN, and | : | No. 4:CV-07-349 |
| JOHN F. WINKELMAN, JR. | : | |
| | : | (Judge McClure) |
| Defendants. | : | |

**O R D E R**

March 10, 2008

For the reasons set forth in the accompanying memorandum,


**NOW, THEREFORE, IT IS ORDERED THAT:**

1.  Defendant George A. Winkelman's motion under 28 U.S.C. § 2255 is

    DENIED.  (Rec. Doc. No. 1020.)

2.  Defendant John F. Winkelman, Jr's motion under 28 U.S.C. § 2255 is

    DENIED.  (Rec. Doc. No. 1022.)

3.  Defendant George A. Winkelman's motion for appointment of

    counsel is DENIED.  (Rec. Doc. No. 1030.)

4.  Defendant John F. Winkelman, Jr's motion for appointment of

45

counsel is DENIED.  (Rec. Doc. No. 1028.)

5.      Defendants joint motion for disclosure of grand jury materials is

DENIED.  (Rec. Doc. No. 1031.)

6.      Defendants' joint motion to amend their § 2255 motion is DENIED.

(Rec. Doc. No. 1040.)

7.      Defendants' joint amended motion under 28 U.S.C. § 2255 is

DENIED.  (Rec. Doc. No. 1041.)

8.      Defendant Gorge A. Winkelman's "Motion for Production of the

Magistrate Judges' Docket Sheets" is DENIED  (Rec. Doc. No. 1055.)

9.      Defendants' joint motion to compel the government to produce grand

jury materials is DENIED.  (Rec. Doc. no. 1069.)

10.     Defendants' joint "Motion to Determine Status, of the Motion Filed

by George A. Winkelman for the Production of Magistrate Judge's

Docket Sheets. . ." is DENIED.  (Rec. Doc. No. 1070.)

11.     Defendants' joint "Motion to Expand the Record to Include

Additional Specific Example of the Insufficiency of the Indictment" is

DENIED.  (Rec. Doc. No. 1072.)

12.     Defendants' joint "Motion to Expand the Record to Include

Additional Specific Example of Ineffective Assistance of Counsel" is

DENIED.  (Rec. Doc. No. 1073.)

13.    The clerk is directed to close the case file.

14.    There is no basis for the issuance of a certificate of appealability.


   s/ James F. McClure, Jr.     
JAMES F. McCLURE, JR.
United States District Judge